CHARLES H. DART v. CHARLES E. RICHARDSON and Others.[1]

November 17, 1905.

Nos. 14,565—(183).

**Evidence.**

The evidence considered, and *held* to sustain the order of the trial court.

Action in the district court for Meeker county by Charles H. Dart to vacate a judgment by which defendant James Mahoney was decreed to be the owner of certain land, and to establish plaintiff's title thereto, and for further equitable relief. The case was tried before Qvale, J., who found in favor of defendant Mahoney. From a judgment entered pursuant to the findings, plaintiff appealed. Affirmed.

*Alva R. Hunt,* for appellant.

*H. S. McMonagle* and *Brown & Kerr,* for respondent.

ELLIOTT, J.

On December 8, 1891, the defendant Hans Hanson, then being the owner of a quarter section of land in Meeker county, executed a mortgage thereon to the defendant Richardson to secure the payment of the sum of $2,500. On October 5, 1898, an action was commenced by Richardson against Hanson to foreclose this mortgage, and on May 22, 1899, the premises were sold to Richardson. No redemption was made from such sale, and Hanson's title to the land passed to Richardson. At the time of the foreclosure the south eighty acres of the

[1] Reported in 104 N. W. 1094.

land in question was subject to the lien of two judgments—one entered October 22, 1894, in favor of Peter Olson, against said Hanson, for the sum of $106.33, and one entered March 7, 1896, for the sum of $636, in favor of William Kruger. Neither judgment creditor was made a party to the foreclosure action. On October 29, 1898, the Kruger judgment was assigned to Charles H. Dart, the plaintiff in this action, for the purpose of collection, and on March 2, 1899, the Olson judgment was at the instance of John T. Byrnes assigned to the defendant James Mahoney. Thereafter Mahoney caused an execution to issue out of the district court upon the Olson judgment, and a levy was duly made thereunder upon a part of the land described in the mortgage to Richardson. On June 7, 1899, this land was duly sold at execution sale to the defendant, James Mahoney. Charles H. Dart, who held the assignment of the Kruger judgment, caused an execution to issue thereon out of the district court, and a levy was made thereunder upon the same land levied on and sold under the Mahoney judgment. On January 27, 1899, the land was sold at execution sale to Charles H. Dart. From neither execution sale was there any redemption.

In September or October, 1901, an action of unlawful detainer was duly commenced in one of the justice courts of Meeker county by the defendant Richardson against the defendant Hanson and others to recover possession of all the land described in and conveyed by the Richardson mortgage. Thereafter such action was transferred from the justice court to the district court of Meeker county. Both Charles H. Dart, the plaintiff herein, and the respondent, James Mahoney, for the purpose of having the rights of all parties determined, filed complaints in intervention. Dart claimed title to part of the land under execution sale under the Kruger judgment, and Mahoney claimed title to the same land under the sale to him under the Olson judgment. In this action of forcible entry and unlawful detainer the issues as to the title of the various parties plaintiff, defendant, and intervenor were fully tried and determined upon their merits, and on August 20, 1902, it was adjudged and decreed that the defendant, James Mahoney, was then the owner of the land purchased by him at the execution sale under the Olson judgment, and that the plaintiff and appellant herein, Charles H. Dart, had no right, title, or interest whatever to said land. Charles H. Dart brought the present action, in which he seeks to have the judg-

ment and decree entered in that action vacated and set aside on the ground that the said judgment and decree was obtained through fraudulent acts and practices and upon false and fraudulent testimony adduced in support of the allegations contained in the complaint of intervention interposed by the defendant Mahoney. The court found the issues of fact and law in favor of the defendant Mahoney and against the plaintiff, Dart, and judgment was entered accordingly. From this judgment the plaintiff, Dart, appeals to this court.

The claim is that the plaintiff was deceived by his attorney, who fraudulently and without his knowledge had an adverse title taken in the name of a third party, who paid nothing therefor; and, further, that prior to asserting such adverse title the judgment upon which the title rested had been paid to Byrnes, the plaintiff's attorney, who also represented the judgment debtor; and, further, that Byrnes was himself the owner of such adverse title.

The plaintiff's evidence tended to show the following facts: John T. Byrnes was an attorney practicing at Litchfield, and was the attorney for Hans Hanson in the Richardson foreclosure proceedings. That the plaintiff, Dart, with the knowledge and consent of Hanson, employed Byrnes to collect the Kruger judgment, which had been assigned to Dart, and, if possible, to establish it as a prior lien to the Richardson mortgage. Some question arose about the Richardson mortgage being properly recorded so as to constitute notice; and Byrnes, acting for Dart, caused an execution to be issued on the Kruger judgment, and the land herein referred to sold to Dart. No redemption was made from this sale, and Dart became the owner of the land, subject to the mortgage and any rights which existed under the Olson judgment. Shortly after the sale under the Kruger judgment Byrnes told Hanson that in order to protect him it would be necessary to pay or buy the Olson judgment, and sent Hanson to tell Olson to call and see Byrnes about the judgment. Thereafter Olson saw Byrnes, and he and Byrnes entered into an agreement whereby Byrnes undertook to collect the judgment for one-half thereof. Byrnes then caused Olson to execute an assignment of the judgment to the defendant Mahoney, but really for the benefit of Byrnes. Olson did not know that he was executing an assignment, but supposed that he was signing an agreement whereby Byrnes was to have one-half for collecting the judgment. A levy was thereafter made, and the land sold by the sheriff, and the certifi-

cate issued in the name of Mahoney. Mahoney did not at the time pay anything for the assignment, and Olson never received anything for his judgment. Byrnes, not content with deceiving Olson, proceeded to collect the amount of the judgment from Hanson, and Hanson, in compliance with demands by Byrnes that he must bring in wheat to pay for the judgment, brought in over $200 worth of wheat, the proceeds of which were turned over to Byrnes. Byrnes never informed Dart of the levy and sale under the Olson judgment, and Dart never knew of it until long thereafter. In the unlawful detainer action brought by Richardson, Byrnes appeared as Olson's attorney and caused the action to be transferred to the district court. After the transfer Byrnes represented to Dart that it would be necessary for him to intervene, and Byrnes either prepared or caused to be prepared for Dart a complaint of intervention, wherein Dart claimed title and the right to possession of the land, and without Dart's knowledge or consent Byrnes caused the name of O. M. Little to be printed at the end of the complaint as Dart's attorney. Little's name was also signed in the same way to Dart's reply. Byrnes also, without Dart's knowledge or consent, caused a complaint of intervention to be prepared in the name of James Mahoney, wherein Mahoney claimed title and the right to possession of the same land, and signed the name of said Little to this complaint as the attorney for said Mahoney. Byrnes verified this complaint as the agent of Mahoney. That Dart never personally employed Little as attorney, and never knew that Little's name appeared of record as his attorney. After the record title had been vested in Mahoney, and before the trial of the forcible entry and unlawful detainer case, Byrnes secured from him an irrevocable power of attorney granting Byrnes the power to sell, lease, mortgage, or assign any and all certificates of sale upon execution or otherwise, and confirming any and all acts Byrnes had in the past done in reference to any land in Minnesota. Since the determination of the action of unlawful detainer Byrnes has managed and controlled said land. Byrnes never informed Dart of the assignment, levy, and sale of said land upon the Olson judgment, or that it would be necessary for him to redeem therefrom.

The plaintiff contends that the decree of the trial court was erroneous (1) because the Olson judgment had been paid and extinguished.

by the delivery to Byrnes by Hanson of wheat during the year after
the sale and before the expiration of the time of redemption, and (2)
because, if the judgment was not satisfied by this payment to Byrnes,
then the adverse title which was finally vested in Mahoney through
the fraudulent devices of Byrnes inured to the benefit of Dart, because
of the relationship of attorney and client which existed between Byrnes
and Dart.

The first contention is effectively disposed of by the finding of the
trial court. The allegation to the effect that the Olson judgment had
been paid was found not true. There was evidence from which a con-
trary finding might reasonably have been made, but there is also evi-
dence sufficient to support the finding as made, and we would not be
justified in interfering with the conclusion of the trial court.

The second contention of the plaintiff is also without legal merit.
Byrnes was Dart's attorney, and as such owed him undivided alle-
giance and every consideration. His duty required that he use all prop-
er and legal means of establishing the rights of his client. The claim
asserted by Mahoney was antagonistic to that advanced by Dart. If
Byrnes was personally interested in establishing the title under the Ma-
honey judgment, he was disqualified to properly represent the interests
of Dart in the litigation. That he was so interested, and that Mahoney
was no more than his representative, appears clearly from the record,
and for Byrnes to conceal this fact was a breach of professional duty.
If as a result of this misconduct Byrnes secured any advantage Dart
may require him to account therefor to him. But it does not follow
that he is entitled in this action to have the judgment modified and the
title to the land decreed to be in him, instead of in Mahoney. It was
incumbent upon him to prove, not that his attorney was guilty of fraud-
ulent practice, but also that the judgment as entered was obtained by
reason of such fraudulent acts and practices, or upon false and fraud-
ulent testimony adduced at the trial. The record does not disclose the
testimony which was given in the unlawful detainer action, and we
have no way of knowing whether it was false and perjured. It will
be assumed that the judgment was ordered upon sufficient competent
testimony, honestly and truthfully given.

It is apparent that Byrnes was not acting in good faith towards his
client, but his fraudulent practices did not induce the judgment or

prevent Dart's interests, such as they were, from being fully protected. He was represented at the trial by O. M. Little, and, although Little was in the employ of Byrnes, it does not appear that all the evidence which Dart had was not fully and fairly laid before the court. It is apparent that Dart's claim of title was without merit. The Olson judgment, under which Mahoney claimed, was entered October 22, 1894, and the land sold thereunder to Mahoney June 7, 1899. The Kruger judgment, under which Dart claimed, was entered March 7, 1896, assigned to Dart May 2, 1899, and the land sold under execution to Dart on January 27, 1899. Dart did not redeem from the sale to Mahoney, and on January 27, 1900, Mahoney's title to the land became absolute, subject to the interests of Richardson. The Olson judgment was thus a lien superior to the Kruger judgment, and a sale under the former was certain, in the course of time, to cut out all interests acquired by sale under the later judgment unless redemption was made from the former sale. In the unlawful detainer case the court found that this is what happened. None of the parties or their attorneys had at that time any control over the facts. They were not the result of, nor were they in any manner modified by, the conduct of either Mahoney or Byrnes. These independent facts, and not false or perjured testimony, or the fraudulent acts of Dart's attorney, were what induced the court to order the judgment, which, as far as we are able to see, properly disposed of Dart's claim and established the title in Mahoney as the holder of the right to acquire through the Olson judgment.

It follows that the judgment of the court appealed from must be affirmed, and it is so ordered.

Judgment affirmed.